**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**


| | |
|---|---|
| MARCIA HENRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 4:13-CV-637 NAB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |


## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying Marcia Henry's application for disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et*

*seq*. All matters are pending before the undersigned United States Magistrate

Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). Because the

Commissioner's final decision is supported by substantial evidence on the record

as a whole, it is affirmed.

## I. Procedural History

On March 2, 2011, the Social Security Administration denied plaintiff

Marcia Henry's February 9, 2011, application for disability insurance benefits

(DIB) in which she claimed she became disabled on August 25, 2010, because of

right leg pain, blocked artery, low back pain with bulging disc, and depression. (Tr. 56, 58-62, 102-03, 131.)  Upon plaintiff's request, a hearing was held before an administrative law judge (ALJ) on February 29, 2012, at which plaintiff and a vocational expert testified.  (Tr. 25-49.)  On April 24, 2012, the ALJ issued a decision denying plaintiff's claim for benefits finding that plaintiff could perform the full range of light work, which resulted in a finding of "not disabled" as directed by the Medical-Vocational Guidelines.  (Tr. 12-21.)  On February 16, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (Tr. 1-5.)  The ALJ's determination thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

In the instant action for judicial review, plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Plaintiff specifically argues that the ALJ's determination of her residual functional capacity (RFC) lacks support in the medical evidence and fails to take into consideration all of plaintiff's impairments, and particularly her mental impairment.  Plaintiff also contends that the ALJ erred in finding her subjective complaints not to be credible.  Plaintiff requests that the final decision be reversed and that the matter be remanded for further consideration.  For the reasons that follow, the ALJ did not err in her determination.[1]

---

[1] The ALJ found plaintiff's migraine headaches and carpal tunnel syndrome not to be severe

## II. Relevant Testimonial Evidence Before the ALJ

At the hearing on February 29, 2012, plaintiff testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was fifty-one years of age. Plaintiff graduated from high school. Plaintiff is married and lives with her husband and twelve-year-old daughter. (Tr. 30-31, 40.)

Plaintiff's Work History Report shows that plaintiff worked as a cashier and in food service at Target from October 1983 to January 2005. Since August 2005, plaintiff has continued to work at Target stocking merchandise. (Tr. 156.) Plaintiff testified that her current work at Target includes pulling wooden pallets full of boxed merchandise from the stock room to the sales floor, unloading the merchandise and stocking the shelves, and then breaking down the boxes. Plaintiff testified that she lifts between five and fifty pounds with this work. Plaintiff testified that she currently works fifteen hours a week. (Tr. 31-34.)

Plaintiff testified that she used to work full time at her job but switched to part-time in August 2010 because she could not walk or stand continuously for a full eight-hour day. Plaintiff testified that she has had low back pain for ten years

---

impairments. (Tr. 17-18.) Plaintiff does not challenge the ALJ's findings or analysis relating to these impairments. Accordingly, while the undersigned has reviewed the entirety of the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence, the recitation of specific evidence in this Memorandum and Order is limited to only that evidence relating to the issues raised by plaintiff on this appeal.

and currently experiences such pain within half an hour of starting her work shift, with her back beginning to give out within the following hour. Plaintiff testified that the pain radiates to the top of her legs. Plaintiff also testified to having right leg pain that progresses to severe cramping and that nothing relieves the pain. (Tr. 33-34, 42.) Plaintiff testified that her leg pain causes her to call in sick to work two or three times a month because she is unable to stand. (Tr. 44.)

Plaintiff testified that she also experiences depression for which she takes Prozac. Plaintiff testified that she did not experience depression before the onset of her pain. Plaintiff testified that she does not want to get out of bed or clean her house. Plaintiff testified that she also has difficulty with memory and concentration but has no difficulty getting along with people. (Tr. 37-39.)

Plaintiff testified that she takes medication for cholesterol, muscle spasms, and pain but that the medication does not help her conditions. Plaintiff testified that she tries not to take her pain medication or muscle relaxant every day unless she has to because the medication makes her very sleepy. Plaintiff testified that taking Prozac helps the most. (Tr. 35.)

As to her exertional abilities, plaintiff testified that she can walk for half an hour before her pain starts, and she can sit for twenty to thirty minutes before experiencing pain in her back and stiffness in her legs. Plaintiff testified that she experiences pain in her low back and right leg when she stands for thirty minutes.

Plaintiff testified that she can lift twenty-five pounds but experiences back pain when doing so. (Tr. 36-37, 41-42.)

As to her daily activities, plaintiff testified that she works from 4:00 a.m. to 8:00 a.m. three days a week. Plaintiff testified that she then comes home from work, takes her pain medication if necessary, and then sleeps for three or four hours if her leg pain does not keep her awake. Plaintiff testified that she then sits and reads. Plaintiff testified that she has no other hobbies. Plaintiff testified that on days she does not work, she gets up, makes breakfast for her daughter, and takes her to school. Plaintiff testified that she then comes home and lets the dog out. Plaintiff testified that she will perform household chores depending on her mood, but that she makes sure her daughter has clean clothes and something to eat. Plaintiff testified that her husband helps when she is unable to do the chores. (Tr. 39-41.) Plaintiff testified that she sometimes goes to the grocery store with her husband and will sit in the car or on a bench if she is unable to continue shopping. Plaintiff testified that she can care for her personal needs. (Tr. 42-43.) Plaintiff testified that she has a driver's license and is able to drive. (Tr. 30.) Plaintiff testified that she tries to be social and visits with her oldest daughter and eighteen-month-old grandson. (Tr. 45.)

### III. Relevant Medical Records Before the ALJ

On September 21, 2009, plaintiff visited Dr. Daniel Yang at Barnes Jewish

Hospital with complaints of right calf pain with exertion. Plaintiff reported the pain to worsen with walking and with climbing ladders at work, and to be relieved with rest. Plaintiff was instructed to take aspirin and to quit smoking, and laboratory testing was ordered. (Tr. 200-01.)

Plaintiff returned to Dr. Yang on October 12, 2009, with continued complaints of experiencing right calf pain after working all day and after walking for one hour. Plaintiff denied any back pain. Plaintiff also reported being depressed because of her husband's unemployment. Plaintiff reported crying daily, an inability to focus, and an inability to sleep. Physical examination was unremarkable. Plaintiff had full strength in her lower extremities and no pain to palpation of the right calf. Dr. Yang suspected lumbar spine stenosis given plaintiff's symptoms and ordered diagnostic testing. Ultram (Tramadol) was prescribed for pain. Bupropion was started for depression. (Tr. 193-95.)

Plaintiff visited Dr. Felicia Brown at South County Health Center on April 21, 2010, and complained of leg pain. Plaintiff reported not having any back pain or muscle weakness. Plaintiff's current medications included Flexeril (Cyclo-benzaprine) for muscle cramps, Hydrocodone (Vicodin) for pain, and Prozac (Fluoxetine). Physical examination showed tenderness about the lateral aspect of the right thigh. Mental status examination was normal. Plaintiff was diagnosed with myalgia/myositis. On April 29, Dr. Brown noted a CT scan of the lumbar

spine to show spinal stenosis.  A CT scan of the right leg showed no abnormalities.

Plaintiff was referred to neurology for further evaluation.  (Tr. 371-74.)

Plaintiff returned to Dr. Brown on May 5, 2010, with new complaints of

numbness in her left leg.  Plaintiff continued to report numbness in her right leg as

before.  Plaintiff reported her pain to be at a level four on a scale of one to ten.  Dr.

Brown noted plaintiff to have a slow and cautious gait.  Mental status examination

was unremarkable.  Plaintiff was instructed to call neurology to schedule an

appointment.  (Tr. 369-70.)

Plaintiff visited St. Louis ConnectCare on July 26, 2010,[2] for evaluation and

treatment of constant aching and burning pain in the right leg involving the calf

and ankle.  Plaintiff reported having the condition for two years and that her pain

was currently at a level six.  Plaintiff also reported pain and stiffness in her lower

back that had progressed within the previous month.  It was noted that diagnostic

testing showed multilevel degenerative disc disease with a bulging disc at L4-5 and

bilateral nerve root compression.[3]  It was noted that plaintiff was taking Vicodin

and Flexeril with some relief.  It was noted that plaintiff had an upcoming

appointment with a neurosurgeon in November 2010.  Plaintiff also reported

experiencing anxiety.  Plaintiff reported no confusion, memory lapses, or

---

[2] The record is unclear as to the provider at this appointment.  While the treatment note lists
Glenn Lopate as the provider, the note appears to be electronically signed by Eli Shuter.

[3] The diagnostic test that showed these results does not appear to be a part of the administrative

disorientation. Physical examination showed full range of motion about the lumbar spine but with spasm of the right paraspinal muscles. Range of motion, muscle tone, and strength were noted to be normal throughout plaintiff's lower extremities. Heel/toe walking was normal. Jerk reflexes of the ankles were decreased. Plaintiff was diagnosed with low back pain and bulging lumbar disc at L4-5, and it was opined that plaintiff's leg and back pain was due to such disc herniation. Treatment options were discussed, including physical therapy and back exercises. The provider noted that he had requested Target Stores to reassign plaintiff to "duties that limit lifting and carrying heavy weights." Plaintiff was instructed to continue with Vicodin for pain and Flexeril for spasm. Plaintiff was referred for chiropractic treatment, including a trial of traction therapy for treatment of bulging disc. (Tr. 383-86.)

Plaintiff visited Dr. Robert Andel, III, with Innovative Chiropractic at St. Louis ConnectCare on August 17, 2010, for her complaints of severe leg pain. Plaintiff reported that the pain starts within one to two hours of her work day, and that it does not stop. Plaintiff reported that standing and walking worsen the pain. Physical examination showed increased pain with active range of motion with extension about the right low back. Seated Kemp's sign was positive on the right. Palpation along the L4-5 resulted in increased low back pain without referral. A

_____

record.

treatment plan was put in place, and plaintiff was instructed to follow at-home instructions "and be on light duty [at] work."  (Tr. 377-81.)

On September 8, 2010, South County Health Center informed plaintiff that she needed a new referral to continue chiropractic care. Plaintiff responded that her treating chiropractor had left St. Louis ConnectCare for private practice and that she preferred to continue care with him in private practice but could not afford it. (Tr. 365.)

Plaintiff returned to South County Health Center on October 13, 2010, with minor complaints of experiencing low back pain on a daily basis.  Plaintiff reported that taking Hydrocodone and Cyclobenzaprine was effective but that she experienced fatigue with her medication.  Plaintiff reported taking over-the-counter Advil if she needed to be alert.  Plaintiff reported her energy level to be good and that she was sleeping well.  Plaintiff reported her pain to have moderate impact on her recreational activities, and severe impact on her working activities in that she had been off of work since August.  Her mental status examination was unremarkable.  The physical examination showed plaintiff to have a stiff gait and to move cautiously.  Plaintiff was diagnosed with myalgia/myositis, hyperlipidemia, and stenosis.  Laboratory testing was ordered.  (Tr. 363-64.)

In a note dated October 27, 2010, Family Nurse Practitioner Karen T. Nichols from South County Health Center reported that she informed Target of a

chiropractic note that limited plaintiff to the performance of "light duty." When

informed by Target that there was no light duty work available, FNP Nichols

extended plaintiff's medical leave of absence until November 10, 2010, the date

plaintiff was scheduled to be reevaluated by a neurologist. (Tr. 361.)

Plaintiff visited Dr. Yang on November 1, 2010, and reported that she

experienced right calf pain and low back pain. It was noted that plaintiff had been

seeing a chiropractor and had an upcoming appointment with a neurologist. Dr.

Yang noted undated CT scans of the lumbar spine and right leg to show L5-S1

broad based central disc herniation with at least moderate to severe spinal stenosis;

L4-5 moderate broad based disc bulging associated with central disc herniation and

mild to moderate spinal stenosis; and bilateral intervertebral foraminal

encroachment at L4-5. No abnormalities of the right leg were noted.[4] Dr. Yang

noted plaintiff's medications to include aspirin, acetaminophen, Hydrocodone,

Fluoxetine, and Cyclobenzaprine. Plaintiff reported her depression to be much

better with medication, and Dr. Yang noted the condition to be well controlled.

Physical examination showed plaintiff to have full strength in the lower extremities

and no pain with palpation to the right calf. Plaintiff was diagnosed with right calf

---

[4] Dr. Yang also noted an MRI of the lumbar spine dated December 2009 to show degenerative
disc disease greatest at L4-S1 with mild bilateral neural foraminal narrowing at L4-L5 and a
bulging disc touching the L5 nerve root bilaterally. A central disc protrusion abutting the left S1
nerve root was also noted. (*See* Tr. 189.) While Dr. Yang summarized these MRI findings in his
November 2010 treatment note, the administrative record does not contain the MRI report itself.

claudication possibly caused by spinal stenosis and disc protrusion. Gabapentin was prescribed. (Tr. 189-91.)

On December 13, 2010, plaintiff visited Dr. Bob Geng at Barnes Jewish Hospital to obtain a release-from-work letter due to leg pain and an inability to stand and work. Dr. Geng noted a CT angiogram of the right leg to show occlusion of the right posterior tibial artery. Plaintiff denied having back pain. Dr. Geng noted plaintiff's depression to be stable and controlled with medication. Dr. Geng referred plaintiff to a vascular surgeon for the occlusion condition and provided plaintiff a release-from-work letter. (Tr. 182-83.)

Plaintiff visited Dr. John A. Curci on January 11, 2011, upon referral from Dr. Yang and complained of constant right leg pain exacerbated with walking and prolonged standing. Physical examination was unremarkable. Dr. Curci noted arterial studies not to show any cause for the condition, and opined that the diminutive posterior tibial artery was congenital in nature and not contributing to any vascular changes. Dr. Curci opined that plaintiff's impairment was not vascular in nature. (Tr. 179-80.)

On January 21, 2011, plaintiff visited Dr. Ricardo Rao at Missouri Baptist Medical Center for a second opinion regarding vascular insufficiency in the right leg. Upon physical examination and review of diagnostic studies, Dr. Rao concluded that the pain in plaintiff's leg had nothing to do with arterial

insufficiency.  Dr. Rao determined the etiology of plaintiff's pain to be unknown.  (Tr. 214-19.)

Plaintiff returned to Dr. Yang on January 26, 2011, and reported a worsening of her leg pain in that it was now shooting from her calf up into her thigh.  Plaintiff reported the pain to worsen after exertion.  Plaintiff denied any back pain.  Plaintiff reported the Gabapentin did not relieve her pain and that the medication caused sedation.  Dr. Yang instructed plaintiff to increase her dosage of Gabapentin, and plaintiff's prescriptions for Vicodin and Flexeril were refilled for pain.  Dr. Yang noted plaintiff's depression to be well controlled on Fluoxetine.  Plaintiff was referred to an orthopedist.  Plaintiff was also referred to social work for disability.  (Tr. 175-78.)

Plaintiff visited Dr. Asha Kodwani at South County Health Center on February 7, 2011, with continued complaints of right leg pain.  It was noted that all diagnostic testing yielded negative results.  Plaintiff's medications were noted to include Flexeril, Hydrocodone, and Prozac.  Mental status examination was unremarkable.  Physical examination showed mild tenderness about the right leg muscle.  Plaintiff's gait and coordination were normal.  (Tr. 359-60.)

Plaintiff returned to Dr. Yang on February 23, 2011, with continued complaints of right leg pain.  Plaintiff's depression continued to be well controlled with medication.  Plaintiff was referred to physical therapy at the medical school.

(Tr. 169-72.)

On March 2, 2011, James Spence, Ph.D., a psychological consultant with disability determinations, completed a Psychiatric Review Technique Form (PRTF) in which he opined that plaintiff did not have a severe mental impairment, finding that plaintiff had no limitations in her activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace; and did not have any repeat episodes of decompensation of extended duration. To support this conclusion, Dr. Spence noted record evidence to show that plaintiff had been regularly taking medication for depression since October 2009, that she had not undergone counseling or therapy for the condition nor required psychiatric hospitalization, and that plaintiff's physician determined the condition to be well controlled with medication. Dr. Spence also noted plaintiff to have worked with the impairment through August 2010 and that self-reports of activities and cognitive abilities supported a finding that the impairment was not severe. (Tr. 202-12.)

Plaintiff returned to Dr. Yang on March 9, 2011, and reported that she discontinued Gabapentin because it provided no relief and caused sedation. Plaintiff had no change in her complaints of pain in her right leg and reported the pain to be at a level seven. Plaintiff reported having no back pain. Plaintiff's depression was noted to be well controlled on medication. Dr. Yang made a

second referral to an orthopedist and instructed plaintiff to return to work as tolerated. (Tr. 256-59.)

On May 23, 2011, plaintiff reported to Dr. Yang that she was tired of the continued pain in her right leg and that she was also now experiencing pain in both legs with exertion. Plaintiff reported her pain to be at a level nine. Plaintiff reported the pain to start soon after beginning her work shift. Plaintiff reported that she did not like taking Vicodin because it made her groggy. Dr. Yang noted an orthopedist to opine that testing for exertional compartment syndrome would not be worthwhile, and it was noted that plaintiff could not pay the out-of-pocket expenses for the testing. Physical examination showed full strength of the lower extremities with no pain to palpation of the calves bilaterally. Plaintiff was referred to the pain clinic for possible injection therapy to the lumbar spine. Plaintiff also reported that she felt depressed, was crying a lot, was tired all of the time, could not concentrate, and was binge eating. Plaintiff's dosage of Prozac was increased from 20mg to 40mg. (Tr. 243-45.)

Plaintiff returned to Dr. Yang on July 25, 2011, and complained of low back pain with pain shooting down the right leg. Plaintiff reported the pain to be at a level six. Plaintiff reported that she would not take Gabapentin because of its sedation. Dr. Yang noted that plaintiff continued to work at Target. Physical examination was unchanged from the previous visit. Dr. Yang prescribed Voltaren

cream and made a second referral to the pain clinic. Dr. Yang also noted plaintiff to continue to be very depressed. Plaintiff did not want to change from Prozac to Cymbalta. Dr. Yang increased plaintiff's dosage of Prozac to 60mg. (Tr. 227-29.)

On October 4, 2011, plaintiff reported to Dr. Yang that Voltaren cream was somewhat helping her pain. Plaintiff's current medications were noted to include aspirin, Fluoxetine, Hydrocodone, Voltaren transdermal gel, and Fluoxetine. Physical examination was unchanged. Plaintiff had not yet been contacted by the pain clinic. Noting that plaintiff continued to be very depressed, Dr. Yang increased plaintiff's dosage of Prozac to 80mg. (Tr. 222-24.)

## IV. The ALJ's Decision

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. The ALJ found plaintiff not to have engaged in substantial gainful activity since August 25, 2010, the alleged onset date of disability. The ALJ found that plaintiff's degenerative disc disease was a severe impairment, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found plaintiff to have the RFC to perform the full range of light work.[5] The ALJ determined plaintiff not to

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

have any past relevant work.  Considering plaintiff's age, education, work experience, and RFC, the ALJ determined the Medical-Vocational Guidelines to direct a finding of "not disabled."  The ALJ thus found plaintiff not to be under a disability from August 25, 2010, through the date of the decision.  (Tr. 17-21.)

## V.  Discussion

To be eligible for DIB under the Social Security Act, plaintiff must prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the

Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the

Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall*, 274 F.3d at 1217 (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

A.    Severity of Mental Impairment

At Step 2 of the sequential analysis, the ALJ determined, *inter alia*, that plaintiff's depression was not a severe impairment. In making this determination, the ALJ accorded great weight to Dr. Spence's opinion that plaintiff's mental impairment was not severe, and further noted that plaintiff's "depression is well controlled on medication, according to her records. She has never been seen by a psychiatrist or treated by a psychotherapist." (Tr. 17.) (Internal citations to record omitted.) Plaintiff claims that the ALJ erred in this determination inasmuch as she failed to undergo the analysis required by 20 C.F.R. § 404.1520a when determining the severity of mental impairments and, further, failed to consider the evidence of record that showed an exacerbation of symptoms. In response, the Commissioner argues that the ALJ's failure to undergo the § 404.1520a analysis was, at most, harmless inasmuch as substantial evidence on the record as a whole

supports the finding that the impairment is not severe. For the following reasons, the Commissioner's argument is well taken.

In addition to the five-step sequential process by which the Commissioner is to generally determine disability, the Social Security Regulations provide additional procedures for the Commissioner to undergo in evaluating mental impairments. 20 C.F.R. § 404.1520a. First, the Commissioner must evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable impairment; and specify such symptoms, signs and laboratory findings substantiating the presence of such impairment. 20 C.F.R. § 404.1520a(b)(1). The Commissioner then must determine the severity of the impairment. To do so, the Commissioner is required to rate the degree of functional loss the claimant suffers as a result of the impairment in the areas of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

> When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. . . .
>
> . . .

> If we rate the degree of your limitation in the first three functional
> areas as "none" or "mild" and "none" in the fourth area, we will
> generally conclude that your impairment(s) is not severe . . . .

20 C.F.R. § 404.1520a(c)(4)-(d)(1). At the initial and reconsideration steps of the administrative process, the Commissioner must complete a standard document outlining the steps of this procedure. At the hearing and Appeals Council levels, application of the procedure must be documented in the written decision. 20 C.F.R. § 404.1520a(e).

The Commissioner concedes in her Brief that the ALJ did not document in her written decision her ratings of the degree of plaintiff's functional limitations as required by § 404.1520a(c), (e). In finding plaintiff's mental impairment not to be severe, however, the ALJ accorded great weight to Dr. Spence's same finding, which was based upon his completion of a PRTF that included his ratings under § 404.1520a(c) that plaintiff experienced no limitations in the broad areas of functioning and no episodes of decompensation. Because the ALJ accorded great weight to Dr. Spence's findings based upon these ratings, it cannot be said that the ALJ did not consider the degree to which plaintiff is able to function in the four broad areas required to be considered. *Cf. Buckner v. Astrue*, 646 F.3d 549, 556-57 (8th Cir. 2011) (State agency consultant's PRTF findings that mental impairment resulted in no more than mild limitations in broad areas of functioning under § 404.1520a provided substantial evidence to support ALJ's finding that

claimant's mental impairment was not severe). By according great weight to Dr.

Spence's opinion, which was based upon the § 404.1520a(c) factors, the ALJ's

failure herself to delineate these factors in her written decision amounted to

nothing more than harmless error. *Cf. Prochaska v. Barnhart*, 454 F.3d 731, 736-

37 (7th Cir. 2006) (harmless error where ALJ did not expressly address impairment

(obesity) in written decision but adopted limitations suggested by doctors who

were aware of impairment), *cited approvingly in Partee v. Astrue*, 638 F.3d 860,

863 (8th Cir. 2011). *See Cuthrell v. Astrue*, 702 F.3d 1114, 1118 (8th Cir. 2013)

(ALJ's failure to rate severity of mental impairment under § 404.1520a may be

subject to harmless error analysis). This is especially true here where the ALJ

bolstered her reliance on Dr. Spence's findings by noting the evidence to show that

plaintiff's impairment was well-controlled with medication and that plaintiff had

never been treated by a mental health professional. *Cf. Kirby v. Astrue*, 500 F.3d

705, 709 (8th Cir. 2007) (lack of any formal treatment by psychiatrist,

psychologist, or other mental health professional supported ALJ's finding that

claimant's mental impairment was not severe); *Johnson v. Apfel*, 210 F.3d 870,

874-75 (8th Cir. 2000) (anxiety not severe where evidence showed symptoms

responded to medication); *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996)

(medical impairment not severe where evidence showed improvement with

medication).

Because substantial evidence on the record as a whole, including Dr.

Spence's Mental RFC Assessment and PTRF, supports the ALJ's determination

that plaintiff's mental impairment is not severe, her failure to delineate the §

404.1524a(c) factors in her written decision amounts to nothing more than

harmless error in the circumstances of this case and an arguable deficiency in

opinion-writing technique. *Buckner*, 646 F.3d at 560 (arguable deficiency in

opinion-writing technique had no bearing on outcome of case and does not require

remand).

To the extent plaintiff argues that the ALJ nevertheless failed to consider the

exacerbation of her depressive symptoms beginning in May 2011, which was after

Dr. Spence's opinion, a review of the evidence shows such increase in symptoms

to be relatively minor. While plaintiff reported an increase in symptoms in May,

July, and October 2011, plaintiff continued to see only Dr. Yang and did not seek

treatment from a mental health professional. In addition, Dr. Yang's treatment

during this period consisted only of an adjustment to plaintiff's medication and did

not result in any referral for mental health treatment, despite Dr. Yang's

continuous referrals to other specialists for treatment relating to other impairments.

Finally, during this period, Dr. Yang did not increase the frequency with which he

monitored plaintiff's condition and indeed continued to instruct plaintiff to return

for follow up every two to three months. Consideration of all of this evidence

shows that plaintiff's symptoms of depression, while having increased during this five-month period, did not so alter her functioning that her mental impairment could no longer be considered non-severe.  *Cf. Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) (ALJ did not err in relying on experts' opinions that were given prior to increase in claimant's depressive symptoms where such increased symptoms were relatively minor).

Accordingly, to the extent the ALJ erred in the manner by which she reached her conclusion at Step 2 of the sequential analysis that plaintiff's mental impairment was not severe, such error was harmless.  Because a review of the record shows the ALJ's Step 2 determination as to plaintiff's mental impairment to be supported by substantial evidence on the record a whole, such determination must be affirmed.

B.    RFC Determination

Plaintiff claims that no medical evidence supports the ALJ's RFC finding that she can perform the full range of light work.  Plaintiff contends that the ALJ should have ordered a consultative examination to assist her in determining what work-related activities plaintiff is able to perform.

A claimant's RFC is the most she is able to do despite her limitations.  20 C.F.R. § 404.1545; *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).  The ALJ bears the

primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, the observations of treating physicians and others, and the claimant's description of her limitations. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002); *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001); *Dunahoo*, 241 F.3d at 1039 (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); *see also* 20 C.F.R. § 404.1545(a). As such, when determining a claimant's RFC, the ALJ must necessarily evaluate the credibility of the claimant's subjective complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell*, 259 F.3d at 712. The burden to prove the claimant's RFC, however, rests with the claimant and not the Commissioner. *Pearsall*, 274 F.3d at 1217.

A.   *Credibility*

In determining a claimant's credibility, the ALJ must consider all evidence relating to her complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue,* 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739

F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). While an ALJ need not explicitly discuss each *Polaski* factor in her decision, she nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

When, on judicial review, a plaintiff contends that the ALJ failed to properly consider her subjective complaints, "the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson,* 363 F.3d at 738-39. It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel,* 239 F.3d 958, 962 (8th Cir. 2001). The determination of a claimant's credibility is for the Commissioner, and not the Court, to make. *Tellez,* 403 F.3d at 957; *Pearsall*, 274 F.3d at 1218.

Plaintiff contends that the ALJ erred in her credibility determination by improperly focusing on and/or mischaracterizing her part-time work, her treatment modalities, and the extent to which she was treated by specialists. For the

following reasons, the ALJ did not err in her credibility determination.

A review of the ALJ's decision shows her to have set out numerous inconsistencies in the record upon which she found plaintiff's subjective complaints not to be entirely credible. First, the ALJ noted that plaintiff continued to work upon being diagnosed in 2009 with degenerative disc disease and was currently working part-time in a position requiring pushing and pulling of wooden pallets, stocking shelves, and lifting up to fifty pounds. *See Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994) (intention to work and actual performance of medium-exertional work during relevant period supported ALJ's determination that claimant could perform light work despite complaints of pain); *see also Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity."). While plaintiff cites *Cline v. Sullivan*, 939 F.3d 560 (8th Cir. 1991), to argue that she should not be penalized for working part-time to pay for healthcare, the part-time work performed here by plaintiff, unlike in *Cline,* cannot be considered "largely passive" or deliberately restricted "by the good graces of her employer[.]" *See Cline*, 939 F.3d at 556. Indeed, when advised that plaintiff could engage in only light work duties, Target reported that there were no light duties available. Plaintiff nevertheless returned to work in her position. The ALJ also noted that plaintiff's only treatment for her alleged disabling pain was medication, and that plaintiff avoided taking such

medication so she could stay alert. Taking pain medication only as needed "could create doubt in a reasonable adjudicator's mind with regard to [a claimant's] testimony about the extent of her pain." *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 969 (8th Cir. 2003). The ALJ also noted that plaintiff never participated in physical therapy, never used a TENS unit, never underwent injection therapy, and discontinued chiropractic care entirely when her chiropractor left for private practice. *See Black v. Apfel*, 143 F.3d 383, 386-87 (8th Cir. 1998) (conservative course of treatment inconsistent with complaints of debilitating pain). While plaintiff correctly contends that the referral process affected efforts to receive steroid injections, the record nevertheless shows that plaintiff continued to work without such injections. In addition, plaintiff argues that contrary to the ALJ's statement that she had not been evaluated by a specialist, she had in fact been evaluated by a neurologist, vascular surgeon, and orthopedist. A review of the record, however, shows it to include treatment notes only from vascular specialists who noted plaintiff's impairment not to be caused by vascular insufficiency. Although the record contains referrals to other specialists, there are no notes or treatment records therefrom.[6] Finally, the ALJ noted that none of plaintiff's treating physicians limited her work duties in any way and that the chiropractic

---

[6] Plaintiff contends her appointment with St. Louis ConnectCare in July 2010 was with a neurologist. There is no indication of such specialty in the treatment note, however. (*See* Tr. 383-86.)

note that plaintiff engage in only light duties and non-heavy lifting was

inconsistent with plaintiff's claim that her pain bars her from employment

entirely.[7]  *See Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005) (ALJ

emphasized that no doctor opined that plaintiff was disabled); *Melton v. Apfel*, 181

F.3d 939, 941 (8th Cir. 1999) (claimant's complaints undermined by lack of

significant restrictions placed on him by his doctors).  These reasons to discredit

plaintiff's subjective complaints of pain are supported by substantial evidence on

the record as a whole.

Accordingly, in a manner consistent with and as required by *Polaski*, the

ALJ considered plaintiff's subjective complaints on the basis of the entire record

and set out numerous inconsistencies that detracted from her credibility.  Because

the ALJ's determination not to credit plaintiff's subjective complaints is supported

by good reasons and substantial evidence, this Court must defer to the ALJ's

credibility determination.  *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir.

2012); *Goff,* 421 F.3d at 793; *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir.

2005).

B.     *Medical Evidence*

The ALJ found plaintiff to have the RFC to perform the full range of light

---

[7] The ALJ attributed one of these notes to a chiropractor instead of to the examining physician
who actually imposed the limitations.  A reading of the ALJ's decision *in toto* shows her
misidentification of the author of one of these notes not to have affected the outcome of the case.

work.  Plaintiff contends that no medical evidence supports this finding and that, when considering plaintiff's severe impairment in combination with her non-severe mental impairment, the evidence shows plaintiff unable to perform such work. Plaintiff also contends that, given the lack of opinion evidence in this cause, the ALJ should have ordered a consultative examination to assist in the RFC determination.

As an initial matter, the undersigned notes that the ALJ properly found plaintiff's depression not to be a severe impairment, *see* discussion *supra* at Section V.A, and based this determination on Dr. Spence's opinion that plaintiff experienced no limitations in activities of daily living; social functioning; and concentration, persistence, or pace.  Where a claimant suffers no limitations in these broad areas of functioning, it follows that an ALJ does not err in failing to include any mental limitations in the RFC assessment.  *Cf. Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) (ALJ may omit mental limitations from hypothetical question where such limitations are not severe) (citing *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998)).

With respect to plaintiff's claim that no medical evidence supports the ALJ's RFC determination, the Court must look to the record and determine whether medical evidence exists of plaintiff's RFC at the time of the hearing.  *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).  So long as the evidence of record

provides a sufficient basis for the ALJ's decision, the ALJ is permitted to issue a decision without obtaining additional medical evidence. *Id.* The absence of *opinion* evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding. *See Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007); *see also Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence). Because sufficient medical evidence shows plaintiff to have had the RFC to perform light work at the time of the hearing, the ALJ did not err in her RFC determination nor in her failure to order a consultative examination.

The medical evidence of record shows plaintiff to have consistently had unremarkable physical examinations despite her complaints of debilitating pain. Such examinations repeatedly showed no weakness in the lower extremities, no neurological deficits, and no pain. Plaintiff had full range of motion about the lumbar spine in July 2010. While plaintiff exhibited some pain with range of motion in August 2010, the chiropractic examination of that date resulted only in a limitation to light duty at work. *E.g., Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000) (per curiam) (treating physician's release of claimant to light duty work constitutes some medical evidence of RFC). No other range of motion deficits are noted in the record. Indeed, the record shows plaintiff's treating physician to

consistently be aware of plaintiff's work duties at Target, but he never imposed work restrictions or any other limitations. In addition, while plaintiff complained of minor back pain in October and November 2010, she specifically denied any back pain thereafter. Such objective evaluations of plaintiff's physical condition, when coupled with the ALJ's proper discrediting of plaintiff's subjective complaints, supports the ALJ's decision. *Anderson*, 51 F.3d at 780. Although plaintiff argues that the ALJ should have ordered a consultative examination to address her functional limitations, the ALJ's duty to develop the record does not require her to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

The ALJ properly established plaintiff's RFC based upon all the record evidence in this cause, including medical and testimonial evidence. Because the record contains some medical evidence that supports the RFC and substantial evidence on the record as a whole supports the determination, the ALJ did not err.

## VI. Conclusion

For the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's determination that plaintiff was not disabled through the date of her decision is supported by substantial evidence on the record as a whole, and plaintiff's claims of error are denied.

Therefore,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is affirmed, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 20th day of May, 2014.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE